U.S. BANKRUPTCY COURT
District of South Carolina

Case Number: 07-04693

ORDER SUSTAINING TRUSTEE'S OBJECTION TO CONFIRMATION

The relief set forth on the following pages, for a total of 8 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**02/08/2008**



_____
US Bankruptcy Court Judge
District of South Carolina

Entered: 02/08/2008

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | Case No. 07-04693 |
| Frankie James Anstett, Sr., | ) | |
| | ) | ORDER SUSTAINING TRUSTEE'S |
| | ) | OBJECTION TO CONFIRMATION |
| Debtor. | ) | |
| | ) | |

THIS MATTER is before the Court for confirmation of the chapter 13 plan. The trustee has objected to confirmation. The primary issue is whether the amount of 401(k) loan payments that are completed before the chapter 13 plan term ends must be added, for confirmation purposes, to the disposable income to be paid under the terms of the plan.

Frankie James Anstett, Sr., ("Debtor") filed a petition for relief under chapter 13 of the Bankruptcy Code on August 31, 2007. Debtor is not married and has no minor dependents. His annual gross income is $54,624.72. The applicable median income in South Carolina is $33,147.00. Prior to filing the bankruptcy petition, Debtor incurred two loans from his § 401(k) plan. The first loan, made April 18, 2006 in the amount of $13,800.00, was payable over 36 months and is presently paid through payroll deduction in the amount of $214.96 per bi-weekly pay period. It will be paid in full in May, 2009. The second loan, made on May 10, 2007 in the amount of $12,500.00, was payable over 60 months and is also paid through payroll deduction in the amount of $127.31 per pay period. It will be paid in full in May, 2012.

Debtor proposes a plan providing for payment to the trustee of $670.00 per month for 60 months. Unsecured creditors are to receive one percent (1%) of their allowed claims. Debtor reports $21,971 in debt secured by avoidable household goods liens and $6663.00 in

other unsecured debt.  Debtor's Schedules I and J yield net monthly income of $681.90.  The Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Form 22C) reflects a calculation of "Monthly Disposable Income Under § 1325(b)(2)" on Line 58 of -$523.88.  Both Schedules I and J and the Form 22C provide deductions for 401(k) contributions and loan repayments that total $ 839.77 per month.  The expenditures for several categories of living expenses reported on Schedule J are minimal[1].

### *Conclusions of Law*

This is a core proceeding.  28 U.S.C. § 157(b)(2)(L).  The Court has jurisdiction of the case pursuant to 28 U.S.C. §§ 157(a) and 1334.  This opinion constitutes findings of fact and conclusions of law in accordance with Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.

The Court confirms a chapter 13 plan if the requirements of 11 U.S.C. § 1325[2] are met.  If the chapter 13 trustee objects, as is the case here, "the court may not approve the plan unless, as of the effective date of the plan – (A) the value of the property to be distributed [to unsecured claimants] under the plan on account of such claim is not less that the amount of such claim; or (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payment to unsecured creditors under the plan." § 1325(b)(1).  This provision, added by the Bankruptcy Amendments and Federal Judgeship

---

[1] Debtor estimates expenses for food in the amount of $150.00, clothing of $45, and medical or dental expenses of $50.  The food budget, for example, raises significant issues of the feasibility of Debtor's plan that are not addressed here.  While debtors are free to constrain spending in one area to either make a plan work or to afford other reasonable expenditures there is a point at which feasibility or good faith is called into question in connection with unrealistic expense projections.

[2] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 et. seq., will be by section number only.

Act of 1984[3], requires, on objection of the trustee (or an unsecured creditor), that either allowed unsecured claims be paid in full or that the debtor pay all disposable income to the trustee for distribution to unsecured creditors.

Section 1325(b) was amended in significant respect by the 2005 amendments to the Bankruptcy Code[4]. The calculation of "disposable income" was codified for debtors earning income above the state median for the same household size and consists of "current monthly income" less "amounts reasonably necessary to be expended . . . determined in accordance with subparagraphs (A) and (B) of section 707(b)(2) . . . ." § 1325(b)(2), (3)[5]. Importantly, "amounts required to repay [loans from qualified retirement accounts]" are not disposable income and a plan may not alter the terms of such loans. § 1322(f).

Few courts have addressed this issue under the 2005 amendments to the Bankruptcy Code. Three courts have construed § 1322(f) to preclude the result advocated by the trustee. Here the trustee seeks denial of confirmation of the plan unless Debtor's plan payments increase by the amount of the monthly payment once the April 18, 2006 obligation is paid. This result is viewed by some courts as an attempt to prorate the 401(k) loan payments over the term of the chapter 13 plan. *See In re Haley*, 354 B.R. 340, 344 (Bankr. D. N.H. 2006), *In re Wiggs*, 2006 WL 2246432 (Bankr. N.D. Ill., August 4, 2006), *In re Lasowski*, 375 B.R. 526 (Bankr. E.D. Ark. 2007). This approach is premised on the line of cases[6] holding that the means test is mechanical and deprives the judge of discretion. *Lasowski* at 531. Other courts view § 1322(f) differently. *In re Nowlin*, 366 B.R. 670, 674 (Bankr. S.D. Tex 2007)

---

[3] Pub. L. No. 98-353.
[4] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8. The amendments are effective in cases filed on and after October 17, 2005.
[5] The actual calculation, and the statute itself, can be quite complicated and takes into account a number of variables that are not present here.
[6] These cases include *In re Barr*, 341 B.R. 181, 185 (Bankr. M.D. N.C. 2006), *In re Kolb*, 366 B.R. 802, 812 (Bankr. S.D. Ohio 2007), and *In re Miller*, 361 B.R. 224, 228-9 (Bankr. N.D. Ala. 2007).

("[A]fter the Debtor has repaid her 401(k) loan obligation . . ., the funds that were previously used to make those payments must be included as part of the Debtor's disposable income. . . .") aff'd Civil Action H-07-2446 (S.D. Tex. December 28, 2007); *In re Novack*, 379 B.R. 908, 911 (Bankr. D. Neb. 2007) (Disagreeing with *Nowlin's* 'projected disposable income' analysis but finding that "§ 1322(f) stands on its own and is quite clear. Only the 'amounts required to repay' 401(k) loans are excluded from disposable income.")

The calculation of "projected disposable income" in this district was first addressed in *In re Edmunds*, 350 B.R. 636 (Bankr. D. S.C. 2006). There the court "disagree[d] with the mechanical application of the Means Test . . . find[ing] that the expense component of 'projected disposable income' should be a reflection of Debtor's applicable or actual projected expenses allowed by the Means Test." *Edmunds* at 643. *Edmunds* provides for a forward looking approach to disposable income; adopted in a growing number of the cases. *See also In re McPherson*, 350 B.R. 38 (Bankr. W.D. Va. 2006), *In re Renicker*, 342 B.R. 304 (Bankr. W.D. Mo. 2006), *In re Watson*, 366 B.R. 523 (Bankr. D. Md. 2007), *In re Kibbe*, 361 B.R. 302 (1st Cir. BAP 2007), *In re Pak*, 378 B.R. 257 (9th Cir. BAP 2007), *In re Lanning*, 380 B.R. 17 (10th Cir BAP 2007). The only contrary appellate authority appears to be *In re Frederickson*, 375 B.R. 829 (8th Cir. BAP 2007).

Here the Court must find "<u>projected</u> disposable income." It may not include "any <u>amounts required to repay</u>" the 401(k) loans[7]. §§ 1325(b)(1)(B), 1322(f) (emphasis added).

---

[7] An excellent discussion of the issue and of the alternative approaches to pension loan repayment deductions from disposable income is found in Judge Lundin's treatise. See Keith M. Lundin, Chapter 13 Bankruptcy, 3d Ed. § 491.1 (2000 and Supp. 2006). The treatise approaches this and other issues from the perspective that the means test calculation is a "mathematical calculation detached from the reality of debtor's financial circumstances." Lundin at 491-3. Notably the drafters of official form B22C create the additional concept of "the monthly average of" pension loan repayments at Line 55 of the form. While forms do not create substantive rights or answer ambiguity, the approach in the Official Forms suggests that deducting a loan repayment from disposable income long after the loan is paid in full is not the correct interpretation of the statute.

"Courts must give effect to every provision and word in a statute and avoid any interpretation that may render statutory terms meaningless or superfluous." *Discover Bank v. Vaden*, 396 F.3d 366, 369 (4th Cir. 2005)(citations omitted). Allowing the continued reduction of Debtor's disposable income by the amount of the 401(k) loan repayment beyond the date of the final payment would result in the deduction of more than is necessary to repay the loan. Only that amount required for repayment of the loan is deducted from the calculation of "projected disposable income." The result is the same with both the forward looking approach to disposable income under § 1325(b) or a narrow focus on loan repayment under § 1322(f).

Once the April 18, 2006 loan is repaid Debtor will have a greater amount of "projected disposable income." A revised calculation of § 1325(b)(2) disposable income on Line 58 of Form B22C, omitting the $214.96 per pay period deduction, continues to result in a negative amount of disposable income. Debtor and the trustee invite the Court to step into the quagmire of the calculation of disposable income in order to arrive at a monthly plan payment. This invitation is premised in part on a flawed view of the purpose of the means test calculation. The means test calculation is that, a calculation, and nothing more. "Its purpose is to determine the amount of the debtor's disposable income that <u>must</u> be returned to unsecured creditors over the life of the plan. It does not, by itself, establish the debtor's plan payment nor the order in which claims will be paid." *Novak* at 911 (emphasis added). In other words the means test, even under the mathematical calculation line of cases, simply establishes a floor for the dividend to unsecured creditors. *See also Edmunds* at 644.

The trustee argues that Debtor should be restricted to expenses reflected on Schedule J and should, after completing the 401(k) loan repayment, make all of that money available

for distribution under the plan. This would significantly increase the dividend to unsecured creditors. Debtor, on the other hand, argues that after months of sacrifice to repay the 401(k) loan he should be permitted to use the funds to increase expenditure for his living expenses. *Edmunds* and the other forward looking expense cases do not go so far as to require the wholesale substitution of Schedule J expenses for those "reasonably necessary to be expended" and determined in accordance with § 707(b)(2)(A) and (B). Nor, in this instance, must the Court become mired in the review or approval of each individual line item for expenses.

This Court has the authority to make an independent review of the propriety of plan confirmation. Among the requirements for confirmation is that the plan be proposed in good faith. § 1325(a)(3). The test in this circuit is whether the plan represents a good faith effort to satisfy creditors' claims. *Neufeld v. Freeman,* 794 F 2d 149 (4th Cir. 1986). Determining whether a plan is proposed in good faith is based upon the totality of the circumstances. The relevant factors include the percentage of proposed repayment, the debtor's financial situation, the period of time payment will be made, the employment history and prospects of a debtor, the nature and amount of unsecured claims, a debtor's past bankruptcy filings, the debtor's honesty in representing facts, any unusual or exceptional problems, the debtor's pre-filing conduct and the possibility of non-dischargeability in a chapter 7 proceeding. *Deans v. O'Donnell*, 692 F.2d 968 (4th Cir. 1982), *Neufeld*. The object is to determine whether there has been "an abuse of the provisions, purpose, or spirit" of Chapter 13 in the proposal or plan. *Deans* at 972.

Here Debtor proposes a one percent dividend to creditors; less than $300.00. His employment is stable, he has been with the same company for 30 years and his prospect of

continued employment is good. He proposes to make plan payments for 60 months but will have paid one of his 401(k) loans after only twenty months. He proposes to pay the claims secured by two vehicles and the second mortgage on his home in full through the plan. This consumes most of the plan payment. Debtor has not previously filed a bankruptcy petition. His pre-filing conduct and post-petition honesty and cooperation have not been challenged. In the end, Debtor will have no secured debt, save that remaining on his first mortgage. He will have repaid his 401(k) plan the money he borrowed, thus improving his retirement prospects. Debtor is essentially repaying himself. He will exit bankruptcy with no remaining unsecured debt.

While Congress has expressed the public policy favoring continuation of debtor contributions to qualified retirement plans in bankruptcy and providing that loans from such plans may be repaid, this in no way supports Debtor's proposal to repay the loan to his retirement plan and then use the funds for other living expenses.

The strict, mechanical application of § 1325(b)(1)(B) following computation of disposable income using artificial expenditures does not necessarily satisfy the requirement to propose a plan in good faith. *Edmunds* at 648, *In re Solomon*, 67 F.3d 1128 (4th Cir. 1995) (Remanding case for consideration of good faith in the filing of the plan although the debtor had met the requirements of the version of § 1325(b) then in effect). The completion of payments to the 401(k) plan does not simply free that money for discretionary application but should shift to creditors, at least in significant part, and result in repayment of the people Debtor owes. To propose nothing further to them, especially with an initial one percent dividend, is not a good faith effort.

Confirmation of Debtor's plan filed August 31, 2007 is denied.